The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, Counsel. Ms. Ball, you may proceed. Good morning, Your Honors. May it please the Court. The District Court abused its discretion by imposing the bans on Internet access and adult pornography in this case. Its generalized concern that these items were problematic was insufficient to justify the severe and expansive restrictions they imposed. The government relies on unsubstantiated allegations from the revocation petition to defend the bans. However, the District Court explicitly disclaimed reliance on those allegations when imposing the bans. At the hearing in Joint Appendix 110 to 111, you can see the District Court told the government, if you want me to consider the allegations in the revocation petitions, the defendant hasn't admitted, put up evidence, or I'm not going to do it. The government didn't do it, so they weren't considered. Ms. Ball and Ms. Floyd, you started out your argument by saying they abused discretion. What about the pornography ban? Is that going to be standard review going to be plain error or abuse of discretion? It should be abuse of discretion. The Defense Counsel objected to the pornography ban in the District Court, arguing it wasn't reasonably related and overbroad. To the extent that the plain error question goes to the government's arguments that even objected to conditions at revocation hearings are reviewed under a plainly unreasonable standard which incorporates plain error elements, that is incorrect. As I noted in my brief, every single court of appeals views the objected to conditions at a revocation hearing for abuse of discretion. The reason for that can be seen in the Crudup case, where the revocation imprisonment term is governed by 3742 subsection regarding a sentence that was imposed without an applicable guideline. When it comes to conditions, these condition challenges, the subsection under 3742 is that the sentence was imposed in violation of law, because that's what these challenges are about. They're saying these conditions were imposed in violation of 18 U.S.C. 3583D. And here, the most severe condition in the case is the internet ban, and that condition doesn't satisfy 3583D because it exacts a greater deprivation of liberty than reasonably Ms. Baldwin, before you get to the substance, I want to spend a little more time on the standard of review. So your position is that the special conditions of a revocation sentence fall under 347-2A-1? Is that what I'm understanding you to say? Yes, Your Honor. And so, is it your position that you would have a different, does that imply that the prison sentence and the special conditions are not unitary? Does that run afoul of the unitary doctrine? It's not that they're not unitary, but they're just, the particular issues being appealed are different, and so they garner a different level of review. If a district court imposed a sentence in excess of the statutory maximum, there's no, like, even if there wasn't a guideline, you wouldn't look for plainly unreasonable, you'd say like, that was imposed in violation of law. So regardless of whether or not there's settled Supreme Court or Fourth Circuit precedent, that's just not, that's an error of law that should be corrected on appeal. Okay. Is there an or after one and before two in the statute? I don't believe so, but I don't have a copy of it in front of me. There's an or after two and after three. What's the significance of there not being an or after one? Does it mean one and two both have to be met if you're looking at one? No, I would say not. I mean, because, well, part of the problem, I mean, we have had sentencing appeals for many a time, and I've never seen a district court indicate that a sentence had to be both had to violate settled Supreme Court and Fourth Circuit precedent and be opposed in violation of the law when there was objection in the district court. So yeah. It's just odd, it may be, I don't know what that means. It may be an error, it doesn't say and either. It's just peculiar that it doesn't have the or there, but anyway, go ahead, I appreciate your answer. I understand. Thank you, Your Honor. So going back to the return to the internet ban here, and it's a greater deprivation of liberty than reasonably necessary, and that's because of three reasons with the internet ban. First, an internet ban restricts an immense amount of content that's wholly unrelated to any recidivism risk. So as the Supreme Court noted in Packingham versus North Carolina, the need to protect children from sexual predators is indeed compelling. The problem is preventing them from shopping on Amazon, reading the Washington Post website, or checking symptoms on WebMD simply doesn't have anything to do and doesn't move the ball on that goal at all. And the second reason is that an internet ban fails to consider the adverse consequences its restriction has on rehabilitation, which is the point of supervised release. Internet is an essential part of our modern society. Taking it away is going to make it extremely difficult for a defendant to reenter society, and you need look no further than the pandemic we're going through right now, where internet access is what's allowing us to even continue our jobs with social distancing, going to doctor's offices without risking exposure, ordering groceries online. And then the third reason is that there are lesser alternatives available to the district courts aside from outright bans, which includes filtering software to block certain contents or categories of activities. It includes monitoring software. It also includes other conditions that are imposed on Mr. Ellis. So for example, a polygraph requirement, which Mr. Ellis has, and in fact, Mr. Ellis's polygraph condition was what allowed the district court to determine he did access a device that wasn't being monitored by the probation officer. So these conditions show that they do work. The probation officer is still able to monitor the internet activity and ensure it's not being used improperly. And of course, if there is a violation of these conditions, the district court can revoke and send them back to prison, which is what happened here, where Mr. Ellis has served 30 months on revocations, all of which were non-criminal technical violations. He has served more than two times what he got in his original federal offense that carried the supervised release term. Ms. Baldwin, let me ask you, I take it in light of just your argument in the last minute or so, you're not asking us to adopt a bright line rule that an internet ban will always contravene 3583D, are you? No, I'm not. I would say, you know, based on the majority of the court's appeals is a general prohibition. They say generally an internet ban for non-contact offenders is going to exact a greater deprivation of liberty because of those three factors. Of course, if you have the unusual case where there's something like really serious that would justify a ban, that's still open to the district court. But generally, it's going to require a substantial justification, far more than just saying he has a sex offense and has violated his conditions in the past. And here, the deprivation is even more unreasonable because there's nothing in the record indicating a computer or an internet was ever used in any of Mr. Ellis' crimes. His child pornography offense, which occurred in 2005, and his failure to register. So four courts of appeals have noted that where the record lacks evidence of using it of using the internet to facilitate a crime, there is no reasonable relationship. It can't be to the generalized point of, well, these both involve sexual activity or what. So now I would like to move on to the pornography ban. And first is the scope of the pornography ban here is overbroad. It's a greater deprivation of liberty than reasonable if necessary, both because of what pornography encompasses, as well as the location restriction that prohibits him from going anywhere where he could have pained and deteriorated. So I believe as this circuit noted in an unpublished decision in Warbleski that had a similar condition, it would, it could very well prohibit a defendant from even going to a home with an HPM with subscription because visual depictions of stimulated sexual, yes. Ms. Baldwin, I'm sorry to interrupt that and let you get back to that quickly, but am I correct that you have abandoned your argument that the, as to the vagueness of pornography and your argument relates to the over breadth of it? I have, I have, so my argument is if the district, excuse me, if the court adopts the construction, the narrowing construction proposed by the government of tying it to the criminal code, then the court doesn't need to reach the vagueness of undefined pornography. Okay, thank you. So visual depictions of simulated sexual activity between adults are frequently in magazines, advertisements, R-rated movies. So not only can Mr. Ellis, not only does this condition prohibit Mr. Ellis from watching Oscar winning movies like American Beauty or HBO shows like The Wire, it prohibits him from going to Target and libraries because such materials can be obtained. And the district court here didn't explain, and the district court here didn't justify why viewing legal adult pornography increased Mr. Ellis' recidivism risk, which is a necessary component to crafting a condition that is related to that recidivism risk and narrowly Ms. Baldwin, doesn't it in effect prohibit him from going any place there is a phone, a computer, or cable, maybe not even cable TV, but a TV that has cable access? Yes, I would agree with the latter. The only issue I think possibly with a phone is if it's a landline, the 2256 is a landline. I'm in a smartphone. But yes, yes, that's correct, your honor. So it is extraordinarily overbroad, and the Ninth Circuit has weighed in on a similar one and just found preventing someone from going to a big box retailer is just more deprivation than reasonably necessary, and that is especially true here where there's nothing in the record indicating that viewing adult pornography is a recidivism risk for Mr. Ellis. So although there is information in the record regarding his viewing adult pornography, there is nothing from a treatment provider indicating he requires treatment or it's affecting his rehabilitation. In fact, Mr. Ellis was already subject to a condition, sex offender condition number two, that required him to abide by recommendations of a treatment provider. The fact that probation officers... Ms. Thalman, let me ask you this. Assume we rule in your favor, how would we craft an opinion that would give the district court some guidance upon the re-sentencing issue? What should we tell the district court? Sure. You should tell the district court to, you know, excuse me, to when you're evaluating a condition under 3583B, you should identify a particular recidivism risk and then, you know, explain. So in this case, if the district court were to say, you know, I find Mr. Ellis viewing, you know, pornography that's on the sites of the like of Pornhub, then he can craft a condition restricting that activity and then explain, you know, well, the pornography because... So it's hard because honestly, there needs to be more factual development. There's simply not enough in a record. I mean, the district court's explanation here at JA 118.19 is that these items could be problematic and that's true, but there's just so many ways in which they could be problematic. I'm not entirely sure what the district court's issue with Mr. Ellis viewing pornography was. I mean, at the time it was requested, he had a job, he had housing, the treatment provider didn't recommend any restriction. So there has to be more of an evaluation of the relationship between the thing that the district court wants to restrict and the 3583D factors that are centered on making sure this guy doesn't recidivate and increasing and fostering his rehabilitation into society. There are no further questions. I'll sit down now. Thank you, Ms. Baldwin. Thank you. Mr. Enright. Thank you, Your Honor. May it please the court, Anthony Enright for the United States. The district court acted within its discretion and certainly did not act plainly unreasonably by barring Mr. Ellis from having access to his property. The Internet and pornography after revoking his supervised release for the third time. The court acknowledged that these conditions are unusually broad and wouldn't be an appropriate in virtually any other supervised release revocation case that that court had ever seen. But Mr. Enright, if you could, I know you want to get to the substance and I want to hear that. But the standard review is something I want to make sure I understand your position on that. The government I mean, the defendant says that their appeal is under a one, not a four. And if it's first if it's under a one, it doesn't have the plainly unreasonable language to it. What's your position to that? I think Crudup resolves that issue. Your Honor, the Crudup held that a revocation sentence is a sentence for which no guideline applies and therefore falls under 3742A4. I think you alluded to this in your questions to to my friend there. The revocation, the supervised release conditions are part of the sentence upon revocation. And the idea that they are overbroad or that they exceed the court's discretion doesn't make it an illegal sentence. Illegal sentence refers to something like a sentence for which there's no statutory authority at all or for which exceeds the statutory maximum. An argument that it's unreasonable or that it exceeds the discretion given to the court by the statute is pretty much the same argument as under 3553A that it's greater than reasonably necessary. And that's not considered an illegal sentence. That's considered. Let me let me assume I agree with that. Isn't I mean, haven't we? I don't think either of y'all cited our recent Van or Von Donk case. I'm not sure you're familiar with that. I am familiar with it, Your Honor. Doesn't that whether there's not a whole lot of analysis of this issue there, but doesn't that end the question? I don't think so, Your Honor. The Van Donk decision applies the abusive discretion standard, but that's consistent with the plainly unreasonable standard because the plainly unreasonable standard has two parts. First, you determine whether the standard is whether the sentence is unreasonable, which is largely an abusive discretion standard. Only if you decide that it's unreasonable under that part do you move on to the second step, which is to determine that it's plainly unreasonable. Van Donk only reached, and as far as I know, the only issue was litigated, was whether it was an abusive discretion, that first part of that standard. Certainly Van Donk didn't specifically address whether the standard of review was plainly unreasonable, but I don't think there's anything inconsistent with the view that it's plainly unreasonable in Van Donk. And in any event, I think Crudup would control because Crudup is a binding panel decision. I do want to note that this court, too, in an unpublished decision in Shires, applied the plainly unreasonable standard specifically to conditions, as have other circuits, including the Tenth Circuit. It's not in our brief because I didn't see this argument until the reply brief, but I think it's United States v. White, 244, Fed Third, 1199. Shires is 199, Fed Appendix 295. That's applying the plainly unreasonable standard specifically to conditions. So do I understand your position is that an opinion that applies abusive discretion to revocation conditions is not inconsistent with a standard that reviews those for being plainly unreasonable? No, Your Honor. I'm sorry if I'm being unclear, Your Honor. In Crudup, this court described the plainly unreasonable standard as containing two parts. The first part is that the court looks at whether the sentence is unreasonable. And the reasonableness standard, the Supreme Court has said, is an abusive discretion standard. Only if it determines that the sentence is unreasonable does it then move on to the second step, which is to determine whether it's plainly unreasonable under the definition of plain from the plain error review standard. So what I think Van Donk did was evaluate that first component. Is the sentence an abusive discretion under the unreasonableness part of the two-part standard? It didn't grapple with, it didn't address, as far as I know, an argument that the plainly unreasonable standard applied, but it didn't need to because under either standard of review, the first part of the plainly unreasonable standard or abusive discretion on its own, the result was the same. And, Your Honor, I think that that answer is the same here because the court did act within its discretion by imposing these conditions. We may have a significant disagreement with the record, Your Honor, because I understand my friend's position to be that there is nothing in the record suggesting that the defendant requires treatment. But, in fact, the defendant's position in each of his revocation proceedings was that treatment was critical. The first thing he said in his first revocation petition was he wants to receive treatment, Your Honor. He needs inpatient treatment for his issues, which he described as depression, mental health issues, issues with gender identity that had caused him to face confrontations in his community. He had significant and many issues that required treatment, according to his counsel. In the words of his attorney, he's been afforded but had never completed treatment for the issues he has, and I think that treatment is well needed. The district court agreed in every single revocation. It emphasized you need to go to treatment. This is absolutely critical. He possessed child pornography, which got him in trouble in the first place, and then he violated SORNA, and those stemmed, according to his counsel, from issues that required treatment. And, of course, treatment is not a technical thing. It's a core purpose of supervised release, and the defendant simply would not go to treatment. The district court made very clear this wasn't a situation where he couldn't go to treatment. He had an issue with homelessness early in his supervised release term, but he had overcome that. He found a home. He found a job. He simply refused to go over and over again. During his first release term, he missed a host of sessions and failed to show up even for his intake session for sex offender treatment. During his second release term, he lied during a basic evaluation about daily pornography use and the use of Internet devices. And during his third release term, he refused even to complete the sex offender treatment intake interview and refused to attend the required mental health sessions. He just said, nope, I'm not going to go. I'll call you when I'm ready, but I'm certainly not going to go twice a month. It was only after that and only after so many other things have been tried, like monitoring software, like allowing approved devices to access the Internet, like prisons, and less restrictive limitations on pornography and Internet use. It was only after that and after three revocations that the court said, look, in response to your dogged unwillingness to go to treatment, I am going to take away your Internet completely and I'm going to take away pornography. And, you know, if you begin treatment, if you even begin treatment, come back and we can talk about a modification. And that decision was well founded because it was the Internet and pornography that was getting him into trouble. He got himself kicked out of the residential reentry center that the probation office went to lengths to get him into, not once but twice. And he told the probation officer that was because he didn't agree with their policies on phone use and that he couldn't live without his phone. He lied during his sex offender treatment about what about his pornography use. And the probation officer reported in his first revocation petition, which was not disputed at all, the defendant himself relied on it in the district court, that he received, he admitted a serious pornography and sex addiction. And so, Mr. Enright, if I could. Yeah, I appreciate the, you know, the lack of compliance. I mean, I think there is support for that. But, you know, I still think we have to look at the conditions actually imposed. And it seems to me the way the conditions are written, he would not be able to be in his residence or any residence if there's a computer, if there's a smartphone or if there's a TV that has cable access, much less a smart TV. Because in any of those situations, it's a place where pornography could be viewed. And it seems to me that the ban on Internet would prevent him from working if scheduling or communication is required via the Internet. First of all, am I correct in how I read? Am I misreading the effect of the ban? No, I don't think so, Your Honor. I don't believe there's another condition in his supervised release judgment that is similarly broad with respect to child pornography. And that's very common and I don't believe has ever been construed to mean that you can't be in a place where the Internet is available simply because child pornography is obviously technically accessible via the Internet. There are a few doctrines that generally apply to supervised release and I believe they were detailed in the van Gogh opinion. One is that all supervised release conditions exclude inadvertent violations. So the idea that he might go to a grocery store or something and they might have porn in the back and he's going to get revoked for that. No, that's not going to happen. It can't. He would have a defense. It was an inadvertent violation. Mr. Enright, so we'll construe these conditions based on your representation and nobody's going to enforce them? Do you have that authority to do that? Well, no, Your Honor. I'm not saying nobody will enforce them. I'm saying that's what it's supposed to be. You seem to suggest that you have the authority to say that he's going to get a free pass if it's done. It's nothing about inadvertence or your authority to represent him or to say that you said it was okay. Your Honor. We have to construe what's before us. Your Honor, absolutely. It's up to the court to construe this term. I'm not suggesting that I'm construing it myself. What I'm saying is that this court's decision in van Gogh said that supervised release conditions are construed to exclude inadvertent violations. At a release hearing. How would it be inadvertent if he used the Internet deliberately to file a job? No, that wouldn't be inadvertent, Your Honor. We're going to stop him from getting a job? No, Your Honor. I don't know whether or not you'd apply for it. Maybe probably not. But jobs, the only way to apply is through the Internet. I understand, Your Honor. The probation office works with defendants who are subject to this. I'm not talking about the probation office. I'm talking about what the judge said. We're construing what the judge said. You said this is a sentence. It is, Your Honor. You said that you cannot use the Internet. Absolutely, Your Honor. Show me where there's any exception for filing a job. Your Honor, there are no exceptions. Any service that's by virtual means, any of those things. Tell me that. Your Honor, there aren't any. I'm not suggesting that there are exceptions to that Internet ban. That's what I thought. No, Your Honor. If I came across differently, I apologize. I wasn't purporting to say that. I do believe that the probation office works with the defendant. I think they provide them with a flip phone and other means and make sure that they do have access to jobs that don't require them to use the Internet. To be fair, that's not in the record because we don't have in the record, at least before the district court previously, what the court did after this was imposed. But the probation office wants the defendant to succeed, and they're the ones that asked for it. They want him to get a job. They want him to get on track so he's not being constantly revoked, and they're the ones that asked for these conditions. The problem was when he wasn't subject to these restrictions, he wouldn't attend one of the basic tenets. The supervised release revocation, to address another thing my friend said, is not just about avoiding recidivism of the same offense. I mean that's ultimately certainly a need to protect the public from further crimes and to deter him from further crimes, our core purposes. But another core purpose is to provide him with rehabilitative and corrective treatment. The court considered that. Mr. Enright, it looks to me like what the district court was doing, and I'm not inside his mind, but a lot of other options have been tried. They weren't successful. And it looks like he says something to the effect, and I think he references this in the record, that this type of restriction may incent him to go do what I think he should do, which is go get treatment. But it seems to me that's a dangerous sort of rationale for a condition, because you could do a bunch of stuff that would, in effect, incent him to do what the district court feels is appropriate. And I could name some. I don't need to. I mean we can all use our imagination. It seems to me the district court, I appreciate its frustration, given what happened, but maybe using conditions that are so broad that the guy can't even get a job. He really can't operate. I'm not sure he can live anywhere other than a residence that's got no technology in it or visit a place that does, not even a retail establishment. It seems to me the frustration may be understandable, but he went so far that you've restricted the guy's liberty to the point that he can't do anything. So I suppose there are two points I want to respond to, the first being the one about creating incentives. The court didn't just pick random things that the defendant liked and said, I'm going to take them away. These were things that were getting him in trouble. It was his phone use and his need to be on the Internet that got him kicked out of a residential reentry center. It was his daily pornography use and his Internet use that caused him to make false statements during an evaluation. I think the court was very cognizant of that. It wasn't just a, hey, we're going to find something you like and take it away. If there's something that's interfering with your treatment and you've tried every other thing. To respond to your second point, I think the court acknowledged and recognized the breadth of these conditions, but during his prior supervised release term, he was subject to a less onerous pornography ban, which was just, you can't possess or view pornography. It didn't restrict locations. And he was subject to a requirement that he obtain approval from his probation officer before using an Internet connected device. And those didn't work. He still told the court. Is that the, I mean, I agree. I don't think, though, there's law that says if appropriate conditions aren't effective, that you get to use conditions that over-restrict liberty. It's not that there's ever a circumstance where it can over-restrict liberty. But what the standard is, it needs to be no more restrictive than reasonably necessary to further the purpose. And what the court, I think, did was say, I'm going to exercise my discretion to conclude that these are reasonably necessary and are no more restrictive in the light of the extraordinary number of other things we've tried that haven't been successful. So the combination with the threat of revocation, the monitoring software, the requirement of approval and those, that wasn't enough. But here we can at least put it on equal footing. So your ability to use your phone isn't what's standing in the way of going to treatment. If you can't use your phone either way, treatment isn't going to affect your phone use. So you might as well go to treatment. Maybe that will incent him to do it. He wants to avoid treatment. I think this is something that my friend's brief points out. A lot of cases, including the Van Donk case, recognize that treatment providers often say, don't use pornography. So this makes it so that he doesn't have that incentive to avoid treatment. And I think that's why the court properly exercised its discretion and didn't act plainly and reasonably. I don't have too much time left. I'll answer any questions if the court has them. If the court has none, I'll leave. Certainly. I really want to get you nailed down on this. As to the pornography ban, are we reviewing that for abuse of discretion or plain error? Your Honor, I believe it's the plainly unreasonable standard, which has components of both. The vagueness issue on the pornography ban, which I understand to have been essentially abandoned, that would be a pure plain error, all four prongs. But the question of whether the pornography ban was reasonably related to the factors, the relevant factors, I see my time is up, Your Honor. May I finish answering Judge Floyd's question? Yes, you may. Thank you, Your Honor. To the extent it's alleged to be outside the court's discretion or overbroad, that's subject to the plainly unreasonable standard, which first asks, is it an abuse of discretion? Is it plainly unreasonable in the light of the 3553A factors that are made relevant by 3583D? And then the second question is, if the court says yes, is that conclusion plain under the meaning of the word plain and the plain error standard of review, which is, is it dictated by settled law in this circuit? I know I'm over time, so if the court has no further questions, I will close and ask the court that this court affirm the decision of the district court. Thank you, Mr. Enright. Ms. Baldwin, you have some time reserved. Thank you, Your Honor. So address the points. First, on the standard of review, Crudup doesn't control. Crudup didn't say anything about 3742A1 and conditions violating 3583D. So it doesn't control. And a policy reason for you not to go down that road is the Supreme Court has never addressed supervised release conditions. And this court, to the extent it has published opinions on the substantive conditions, I believe there's one. So in essence, the government's saying you are not going to be able to find these conditions unreasonable, especially because of the original sentencing. We all know the participants forget about the conditions of release. All they care about is the imprisonment term. So you should not do the plainly unreasonable standard. This discretion should be should be applied. The second issue is regarding the facts with pornography interfering with treatment. That's one of our arguments. There's nothing about the pornography interfering with treatment. There's nothing that he didn't show up to his appointments, which, by the way, he missed appointments for his first revocation.  The third revocation involves a revocation where Mr. Ellis nearly fading to go once a week rather than the recommended twice a week. The probationer revoked him 13 days after he made the statement. And on the government's claim, well, we're not going to punish inadvertent violations. Well, that's if he makes a wrong turn and winds up in South Carolina when he didn't get permission to go outside the district. That's not our condition by its terms prohibits you from going to a house with HBO and you went to a house where you knew he had HBO. The government's acknowledgement that you're not going to enforce it that way is dispositive. That shows it's not narrowly tailored. It violates 3583 D. And it needs to be vacated, sent back to the court to reconsider it. And finally, on the Internet thing, the court had tried a lot of things, but it can't be forgotten. Mr. Ellis has not committed a substantive sex offense since 2005. None of his conduct during during supervision was criminal conduct. And despite there being three revocations, the district court has never enunciated specifically enunciated. What is problematic about adult pornography and Internet access? He input he allowed the probation officer to decide what Internet access he should be given. And now he's just outright banned Internet access. So, you know, the district court has tried a lot of things, but the district court has not tried enough where he can just throw his hands up in the air and say, you are banished from the cyber world. We don't banish sex offenders who violate their conditions from the physical realm. We shouldn't do it in the digital realm. And indeed, in England and Helena, the second and third circuits adhere to the view that they that the Internet Internet bans are a greater deprivation of liberty than reasonably necessary for serial violators. It included an enticement defendant who similarly was violated his computer restrictions. The third circuit said you've got to try again. There's not even any evidence in the record about the efficacy of monitoring. Or what about limiting his access to the probation officer's physical office space? So he's actually asked that you vacate the conditions of banning Internet access and adult pornography. Thank you, counsel. Under the circumstances, in lieu of our normal tradition of coming down to shake your hand, we'll just have to say we appreciate so much for being here. Thank you so much for your argument. And we hope that you will be safe and stay well.
judges: Roger L. Gregory, Henry F. Floyd, A. Marvin Quattlebaum Jr.